# THOMAS LARKIN

### v.

# ROBERT LAMPING.

*Trespass—Farm Drainage—Diversion of Water from its Natural Course—Proximate Cause of Damage—Turning of Stream into Highway Tile by Adjacent Owner.*

1. Upon the case presented, this court holds that the defendant was liable to the plaintiff for damage done to his crops by an overflowing tile drain which conveyed water from an adjacent highway, it appearing that the defendant had drained water from his land, away from its natural course, into the highway drain emptying into said drain.

2. The fact that at the time the defendant connected with the highway drain the plaintiff warned him that in case of damage he would hold him responsible, renders the defendant's claim that the plaintiff had acquiesced for years in the plan of drainage, untenable in the case presented.

3. The fact that plaintiff had permitted others, whose lands naturally drained across his, to connect with the drain in question, in no respect betters defendant's position.

[Opinion filed May 20, 1892.]

APPEAL from the Circuit Court of Will County; the Hon. DORRANCE DIBELL, Judge, presiding.

Messrs. HALEY & O'DONNELL, for appellant.

Damages are limited to such as are produced by a proximate cause, the maxim being *causa proximæ et non remota spectatur*. Both public policy and necessity seem to demand a limit to liability. If there were no limit to liability in such cases, the responsibility would tend to paralyze the activity and energy of those engaged in the various pursuits and occupations of life; and hence, the limitation expressed by the maxim. Marble v. City of Worcester, 4 Gray (Mass.), 395.

It is not only requisite that damage, actual or inferential, should be suffered, but this damage must be the legitimate

sequence of the thing amiss. The maxim of the law here applicable is, that the immediate and not the remote cause of any event is regarded. Cooley on Torts, p. 68, and authority there cited.

We insist that the evidence in this record does not warrant the inference that the five-inch tile on Larkin's land was the cause of the injury of which he complains, that is, the proximate cause, and if it were not the proximate cause then no recovery can be had.

It is a principle recognized in somewhat varying degrees in every State in the Union, that where the plaintiff is himself to blame for being injured, either in person or property, he can not recover for such injury. In the case of the Aurora Branch Railroad Company v. Grimes, 13 Ill. 588, our Supreme Court announces the rule that the party seeking to recover damages for a loss which has been caused by negligence or misconduct must show that his own negligence or misconduct has not concurred in producing the injury. It has been suggested that, commencing with the case of Galena, etc., Railroad v. Jacobs, 20 Ill. 478. that that rule has been changed, and that in its place the rule of comparative negligence or comparative blame or misconduct has been substituted in Illinois. Such, however, is not the case; a somewhat different method of arriving at the same result has been adopted, but the substance of the rule of law, as announced in the Grimes case, in 13th Ill., remains the same. The rule of law always has been that the negligence which will defeat a recovery must be such as proximately contributed to the injury. The remote cause will no more be noticed as a ground of defense than as a ground of recovery. Cooley on Torts, 679.

As said by Mr. Beach in his work on Contributory Negligence, pp. 85 and 86, " The mistake is, it is believed, in confounding the two essential elements which must concur to render negligence contributory. Negligence is (a) a want of ordinary care on the part of the plaintiff ; and (b) a proximate connection between such want of care and the injury complained of. The rule that the plaintiff may have his

action whenever his negligence is merely the remote cause of mischief, while that of the defendant is the proximate cause, is in the rule of comparative negligence, rewritten, so as to make it that the plaintiff may recover when his own negligence is slight and that of the defendant gross. This confuses two essentially different things; and in such a way as to destroy the rule upon which only a refinement is attempted. Either contributory negligence in its true judicial sense is, or is not a defense." Treating the same subject on the following page the author says that after all the question is, was the misconduct of the plaintiff sufficiently proximate so that it may be said he contributed to the injury; if the answer is in the affirmative no recovery can be had; (a) the injury which appellee complains of in this case was damage to his crops by water; (b) the water standing on his land which caused the damage came there and remained there because of the want of capacity of the tile to carry it off; (c) the plaintiff himself, by permitting Lynch and Smith to drain into the tile, contributed directly to the cause of the injury of which he complains, and having so contributed he can not recover in this action. The principle of law we invoke the aid of in this case is applicable to every species of tort. A man must be free himself from blame in the perpetration of the injury or mischief he complains of, or else a court will deny him relief. He can not himself be in whole or in part to blame for an injury to himself or his property and then have a court award him compensation or damages.

Mr. C. W. Brown, for appellee.

It is established to an absolute certainty that appellant Larkin has drained his land in section five, directly away from its natural course through this hill, so that it is discharged by means thereof upon appellee's premises. The volume of water sent by him is that which could be carried by the five inch and three inch tile flowing into and through the six inch town tile.

It is no defense for this unlawful diversion of water, that it is through tile laid by the highway commissioners;

they have no such right; can not, in the drainage of the roads, do that which an individual might not lawfully do. This is settled by the Supreme Court of this State in Young v. Commissioners of Highways, reported in 25 N. E. Rep. p. 689, where it is said : " The commissioners of highways, where they undertake to drain a public highway, possess the same rights and are to be governed by the same rules as adjoining land owners, who may undertake to drain their own lands, except where they may be proceeding under the eminent domain laws of the State. In Peck v. Herrington, 109 Ill. 611, we had occasion to consider the rights and duties of adjoining land owners, and, among other things, it was there held that the owner of the dominant heritage, or higher tract of land, has the right to have the surface waters which fall or come naturally upon his premises, pass off the same through the natural drains upon and over the lower or servient lands; and the owner of the dominant heritage may, by ditches or drains, drain his own land into the natural and usual channel, even if the quantity of water thrown upon the servient heritage is thereby increased. Under the rule established in that case, it seems plain that, where water accumulating on a particular part of a highway will naturally run off in a certain channel or water way, all of that portion of the highway which lies in such a position as to naturally drain in that direction may be drained in such channel, although the flow may be increased. But the commissioners have no right or power to collect and carry a quantity of water along the highway, which would naturally drain off in another direction, and discharge such accumulated water on the farms of adjoining land owners. Nor have the commissioners the right to divert water from its regular channel, or place where it would voluntarily flow off, and carry it along the line of the highway in ditches, for such a distance as they may desire or think proper, and then discharge that water upon the farm of a land owner. This would be imposing a burden upon the land owner which the law will not tolerate, where the water is diverted from its natural channels, carried along the line of the high-

way for a long distance, and then discharged on the high-way in such manner as to spread over the lands of the complainant. The land owner can not be subject to a burden of this character without a remedy."

HARKER, J.  This was an action of trespass by appellee against appellant to recover damages for the wrongful diversion of water from appellant's land into a highway and thence upon the land of appellee.

· The evidence shows the following facts : Appellee was the owner of a body of farm land in the northwest quarter of section seven in the town of Joliet. It lies immediately south of a public highway, running east and west between sections six and seven. At or near the northeast corner of his land is a natural depression extending in a southwesterly direction across his land, and forming an outlet for surface water from the north, and from the east along the highway for a distance of nearly 4,000 feet. About three-fourths of a mile east of his land is a slight elevation or knoll, which caused the surface water from the lands east to shed in a different direction, toward the south. East of this elevation the ground formed a swale, which without any artificial drainage was wont to hold a considerable amount of water before passing off toward the south. The land of appellant, from which it is claimed the water was wrongfully diverted, is situated in section five, immediately north of the highway and the swale mentioned. The condition of the highway at this point was very bad in wet weather, and the highway commissioners had experienced much difficulty in their efforts to make it passable. With the view of improving its condition, the commissioners decided to drain it east of the elevation mentioned, and accordingly buried six inch tile from a point on the highway about one and a half miles east of appellee's land, through the swale and elevation for a distance of about three-fourths of a mile. The tile was then turned into a ditch constructed by the commissioners along the highway to the depression at the northeast corner of appellee's land. For the pur-

pose of carrying the water rapidly from this ditch in the highway, the commissioners proposed to dig a ditch across appellee's land along the course of the depression, into a channel in lands beyond his. This, appellee refused to allow, but agreed to put in a nine inch tile drain instead, if the commissioners would furnish the tile. Under that arrangement the tile drain was constructed across appellee's land, its sole purpose being to take off the surface water naturally flowing in that direction from the highway adjacent thereto. This occurred about 1880. After the six inch tile drain was laid in the highway, appellant connected with it a five inch tile from his land in section five. Appellee at the time notified appellant that by so doing he was diverting the water from its natural course, and if he was ever damaged by reason of his action in that regard, he should hold him responsible. Appellant subsequently connected another tile (a three inch tile) with the highway tile.

The spring rains of 1890 were quite heavy and the waters turned into the highway tile and the ditch below it were so great as to exceed the capacity of the nine inch tile through appellee's land, already burdened as it was by tile connections from his and two of his neighbors' tracts, situated west of the elevation mentioned. As a consequence his field was flooded and a growing crop of corn damaged. For such damages this suit was brought and a judgment recovered in the Circuit Court for $25.

The importance of the controversy does not rest in the insignificant money judgment recovered. If appellant has the right to drain into the highway tile drain, others east of the elevation have the same right, and appellee must either enlarge the capacity of the drain through his land or suffer, without remedy, the damages incident to every overflow occasioned in the future by heavy rains.

It is conceded that the water from appellant's land would flow naturally in a southeasterly direction across the highway, and that it would not reach the appellee's land in its natural state. It is insisted, however, that appellee had no

cause of action, because, first, he consented to and acquiesced in the right of appellant to drain into the highway tile; second, the act of appellant in connecting with that tile was not the proximate cause of the injury complained of; and third, he wrongfully allowed his neighbors, Patrick Smith and Thomas Lynch, to connect with his tile after appellant had connected with that in the highway, thus burdening the nine inch tile beyond its capacity and causing the overflow.

The evidence fails to show that appellee, by word or action, consented to or acquiesced in the action of appellant. Upon the contrary, when he saw him laying the tile and making the connection, he told him he was doing an unlawful thing, and that if he ever suffered in consequence thereof he should hold him responsible. He did consent to the action of the commissioners in draining the highway east of the elevation into the ditch and thence through his land. Without his consent their action would have been unlawful. Highway commissioners have no right to collect and carry along the highway a quantity of water which would naturally drain off in another direction, and discharge such accumulated water on the farm of adjoining land owners. Young v. Commissioners of Highways, 134 Ill. 569. But because of such consent it can not be held he, in effect, consented to the drainage of appellant's lands through his. When he gave his consent he doubtless considered the nine inch tile sufficient to take care of the water flowing from the highway, and such as would naturally flow from the lands west of the elevation. To the contention of appellant that appellee had acquiesced and remained silent for a period of eight or nine years, and that his conduct in that regard brings him within the provisions of the act of 1889 relating to drainage by mutual consent (Session Laws of 1889, page 116), it may be replied that appellant was not a party to the agreement under which the nine inch tile was laid. The commissioners could not allow him to connect with their tile without violating section two of that act. Such contention, too, is made in the face of the fact

that appellee had warned appellant that whenever damage occurred by reason of such connection, appellant would be held responsible.

Appellee permitted Patrick Smith and Thomas Lynch to drain the water from their farms into the nine inch tile laid through his land. Inasmuch as the capacity of that tile had been ample to take off the water from appellant's land and the highway before then, and as there had been no overflow until after Lynch and Smith had made their connection, it is contended that appellee was guilty of contributory negligence and that the connections made by those men and not the connection of appellant with the highway tile was the proximate cause of the overflow of appellee's land. To those two points it is sufficient to reply that the lands of Lynch and Smith are west of the elevation and have a natural drainage through the depression on appellee's land. Permission to them to confine the flow of water and send it directly into the nine inch tile was not negligence on his part. It was both wise and rightful. The act of appellant in draining into the highway tile must be regarded as the proximate cause of the injury, because it was unlawful and without it the injury would not have occurred.

We do not care to discuss the question of damages. We see no error in the record and the judgment must be affirmed.

*Judgment affirmed.*